UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD PROVENCHER, RICHARD HALL, WILLIAM GARBATI, WILLIAM HAYDEN, GEORGE GAUTHIER, WARREN RUDDLESDEN, WILLIAM ZERONSA, and MICHAEL WHEELER<br>　　　　　Plaintiffs, | : : : : : : : : : | CIVIL ACTION NO.:<br>3:00 CV 2358 (CFD) |
| V. | : : | |
| PFIZER, INC.,<br>　　　　　Defendant. | : : : | SEPTEMBER 27, 2004 |

**SECOND AMENDED COMPLAINT**

I.  SUMMARY

The plaintiffs are all long-time employees of the defendant Pfizer, Inc. at its Groton manufacturing plant and are now retired. In 1990, Pfizer began a ten year downsizing program at the plant. Integral to that plan was the periodic offer of severance incentives to surplus employees. None of the plaintiffs received a severance incentive because Pfizer did not administer the plan in accordance with the law and the terms of the plan. In breach of the plan terms and the law it showed favoritism in administering the plan, giving the incentive to some surplus employees and not others similarly situated and giving the incentive to some non-surplus employees and not to other similarly situated non-surplus employees. Some favored employees Pfizer gave the incentives were even immediately hired back to fill their old jobs as "consultants". The plaintiffs were all victims of this mistreatment and although they each qualified for the incentives under the terms of the plan, Pfizer denied their requests for the benefits.

1

II.  JURISDICTION

1.  Jurisdiction of this Court exists pursuant to 29 United States Code, §1132 (f) of the Employee Retirement Income Security Act of 1974 ("ERISA").   The matter arises under the Constitution and laws of the United States.

III.  PARTIES

2.  The defendant, Pfizer, Inc. is a corporation, doing business in Connecticut.  Pfizer has two major facilities in Groton, Connecticut.  One facility is devoted to manufacturing (the "Groton Plant").  Another facility is devoted to researching and developing new products.  At all times relevant herein Pfizer acted as a "fiduciary" under 29 U.S.C. §1002(21)(A) with respect to its employee benefit plans, including all voluntary separation plans referred to herein and carried out its fiduciary duties at the Groton Plant through its managers and its human resources personnel.

3.  The plaintiff Richard Provencher worked for Pfizer at its Groton Plant for 36 years. He retired in January of 1999. When he retired he held the job title of Lab Technician in the Quality Control Department.

4.  The plaintiff Richard Hall worked for Pfizer at its Groton Plant for 34 years.  He retired on April 1, 1999. When he retired he held the job title of Lab Technician.

5.  The plaintiff William Garbati worked for Pfizer at its Groton Plant for 36 years.  He retired on April 1, 1998. When he retired he held the job title of Supervisor of In-Process Control Lab, Building 123.

6.  The plaintiff William Hayden worked for Pfizer at its Groton Plant for 34 years.  He retired on October 1, 1998. When he retired he held the job title of Senior Technical Manager.

7. The plaintiff Warren Ruddlesden worked for Pfizer at its Groton Plant for 35 years. He retired March 1, 2000. When he retired he held the job title of Process Technician in the Development Lab of the Groton Pharmaceutical Group.

8. The plaintiff George Gauthier worked at Pfizer at its Groton Plant for 32 years. His last job title was Senior Technical Manager in the Development Lab of the Groton Pharmaceutical Group.

9. The plaintiff William Zeronsa worked at Pfizer at its Groton Plant for 31 years. His last job title was Section Supervisor for Product Assurance in the Quality Control Department.

## IV. COUNT ONE

10. In 1990, Pfizer adopted a ten-year-blueprint known as "Groton 2000" which was part of and/or constituted a company vision for the future of the Groton Plant. Its purpose was to restructure, reduce and/or eliminate certain product lines and manufacturing techniques over time. In fulfilling this purpose Groton 2000 also planned to reduce the Pfizer work force at the Groton Plant by several thousand workers over ten years.

11. When it adopted Groton 2000 it also adopted a severance incentive plan. The purpose of the plan was to carry out Groton 2000 by encouraging employees at the Groton Plant to voluntarily leave the company. Although it was initially represented to employees as a one-time offer, the plan was, *de facto*, an ongoing plan and policy because, at the time it was offered, Pfizer anticipated offering severance incentives periodically when and if needed to accomplish the Groton downsizing plan. In 1994, severance plans became official company-wide policy for downsizing when Pfizer adopted a written severance incentive policy not disclosed to the plaintiffs that mandated the use of severance programs like the one offered in 1990 in all possible cases involving downsizing.

12. As written and administered, Pfizer's severance policy constituted, at all times relevant hereto, a *de facto* employee welfare benefit plan as that term is defined under §3 (1) of ERISA. The basic benefit under Pfizer's separation policy was a lump sum payment calculated based upon a number of weeks' pay multiplied by the employee's years of service (the "basic benefit"). The basic benefit was combined with several other traditional welfare benefits including medical benefits and, in the discretion of plan administrators, enhancements to benefits accrued under the company's defined benefit and defined contribution plans (the "discretionary benefits") might be included as an option or a guaranteed benefit. The source of funds for the severance policy was the general corporate assets of Pfizer and, when applicable, the company's defined benefit plan. The participants in the severance policy were Pfizer employees, including those at the Groton Plant. The beneficiaries of the severance policy were those Pfizer employees who were periodically designated as surplus by company administrators. While the participants and beneficiaries of the plan never varied, Groton Plant managers, subject to company approval, made changes to the number of weeks of pay in the basic benefits and changed the discretionary benefits based upon their judgment about the need for a more or less attractive offer.

13. Under the terms of the severance policy, the managers of the Groton Plant were to exercise discretion in the administration of the severance policy in the following fashion. The managers of the Groton Plant would periodically assess the progress of the Groton plant against: (a) the Groton 2000 plan generally, (b) the planned realignment and/or elimination of certain product lines, manufacturing techniques, and job titles and (c) the progress the Groton Plant was making in reducing its work force through natural attrition. Following such periodic reviews, the managers of the Groton Plant were to determine whether each employee at the Groton Plant was a surplus employee, whose services at that stage of the Groton 2000 plan were no longer needed,

or whether such an employee was a non-surplus employee whose services were still needed under the Groton 2000 Plan. If the managers of the Groton Plant after such a periodic review believed there were a significant number of surplus employees, the managers, with corporate approval, were to offer severance policy benefits to the surplus employees.

14. Administrative decisions to offer severance policy benefits at the Groton Plant were repeatedly made from 1990 to 2000.

15. While in part, the severance policy was administered in accordance with the terms as set forth above, Pfizer also repeatedly deviated from administering the severance policy in accordance with its terms and discriminated against employees during its administration. Instead of using the severance policy to rationally reorganize and downsize the Groton Plant, Pfizer managers frequently used the severance policy to show favoritism to specific employees and to disfavor others, including the plaintiffs herein. Pfizer repeatedly offered severance policy benefits to certain non-surplus employees while failing to offer the severance policy benefits to other similarly situated employees or even surplus employees, including the plaintiffs herein. Immediately after granting them the severance policy benefits, Pfizer frequently rehired the favored non-surplus employees as consultants, many times to perform the same job they were just severed from, often for several years. Pfizer transferred or reclassified other employees, including plaintiffs herein, even though the sole or a substantial factor in Pfizer's decision to do so was to prevent them from obtaining severance policy benefits.

16. Based upon their ages and years of service, the severance policy became an undeniable financial attraction to the plaintiffs herein beginning in calendar year 1995. While each of the plaintiffs was a participant in and a potential beneficiary of the severance policy, to each their great financial loss, none of them was included in any offer made after 1995 and none

5

of them received the severance policy benefits. If offered the severance policy benefits, each plaintiff herein would have accepted the offer made closest to their retirement date or, in the case of currently employed plaintiffs, the most recent offer made by plan administrators.

17. The plaintiffs did not receive the severance policy benefits because Pfizer breached its duties to the plaintiffs in one or more of the following ways:

    a.    In violation of ERISA §502 (a)(1)(b) Pfizer denied the plaintiffs benefits due under the severance policy by wrongly failing to designate them as surplus employees, by denying their applications for benefits under the severance policy and by breaching the covenant of good faith and fair dealing that applies to every contract.

    b.    In violation of ERISA §510, Pfizer discriminated against the plaintiffs by falsely designating them as non-surplus employees or refusing to designate them as surplus employees even while designating similarly situated employees as surplus employees, in whole or substantial part for the purpose of interfering with their attainment of rights which they otherwise would have become entitled to under the severance policy.

    c.    In violation of ERISA §§404 and 502(a)(3) Pfizer breached its fiduciary duty to the plaintiffs by (i) failing to administer the plan fairly, honestly, and in good faith, and (ii) failing to administer the severance policy with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims and specifically for failing to take adequate steps to

insure that surplus employees were offered the severance policy and that the severance policy was implemented according to its provisions and in a non-discriminatory manner.

18.  The defendant was a fiduciary with respect to the severance policy within the definition of "fiduciary" under 29 U.S.C. §1002(21)(A) and 29 U.S.C. §1102.

19.  The defendant's actions described in paragraph 18, above, violated its duties to the plaintiffs under 29 United States Code Sections 1132 (a)(1)(b), 1140, and 1104 and the defendant is therefore liable for the civil relief authorized to be imposed upon it by 29 U.S.C. 1132(a)(1)(b) and (a)(3).

20.  Despite the plaintiffs' written demand of the defendant and the exhaustion of all the plaintiffs' administrative remedies, the defendant has failed and refused to allow the plaintiffs to participate in the severance policy.

21.  If the defendant is allowed to continue to bar the plaintiffs from participating in the severance policy, the defendant will be unjustly enriched and the plaintiffs will suffer substantial and/or irreparable harm and /or such action and/or continued action is in violation of 29 U.S.C. 1001-1381, as set forth in paragraph 9, above, such as to warrant the issuance of injunctive relief without further evidence of substantial or irreparable harm.

22.  The plaintiff is specifically entitled to injunctive relief under 29 U.S.C. 1132(a)(3), and/or the plaintiff has no adequate remedy at law.

### IV.  COUNT TWO

23.  On or about April 1, 1998, while he was considering when and whether to retire, the plaintiff William Hayden was told by his immediate supervisor, Carl Schneider, that he would be transferred to the OSP department of Pfizer's Groton Plant within several months.

24. On or about April 15, 1998, Hayden met with Groton Plant manager Robert Schachner at Schachner's office. During that conversation he asked Schachner whether Pfizer was considering using any voluntary separation packages to downsize the Groton Plant. Schachner told Hayden that there would be no more such packages used at the Groton Plant.

25. On or about May 1, 1998, Hayden met with Groton Plant human resources manager Brooks Walker at Walker's office. During that conversation he asked Walker whether Pfizer was considering using any voluntary separation packages to downsize the Groton Plant. Walker told Hayden that there would be no more such packages used at the Groton Plant.

26. On or about June 23, 1998, Hayden met with Pfizer human resources vice president Richard Illingworth at Pfizer headquarters in New York, New York. During that conversation he asked Illingworth whether Pfizer was considering using any voluntary separation packages to downsize the Groton Plant. Illingworth told Hayden that there would be no more such packages used at the Groton Plant.

27. Schachner, Walker, and Illingworth were Pfizer officials the company had told Hayden to rely upon for information related to his options and benefits under Pfizer employee benefit plans. Based upon their specific representations, Hayden elected to retire on or about October 1, 1998. Hayden's decision to retire was made in reasonable reliance upon the actions and/or statements of Pfizer's agents set forth above and, but for such actions and/or statements, Hayden would have delayed his retirement to determine if and when another severance incentive would be offered by Pfizer at the Groton Plant.

28. The representations made to Hayden as set forth in paragraphs 25-27, above, were false statements of material fact made intentionally, recklessly and/or negligently because at the time the statements were made to Hayden, Pfizer had made no decision against the further use of

severance incentive packages for the Groton Plant and/or further such packages were specifically contemplated under the Vision 2000 plan, and/or were under consideration at the time the representations were made to Hayden. Such misrepresentations violated Pfizer's duties under 29 U.S.C. §1104, entitling Hayden to appropriate equitable relief under 29 U.S.C. §1132(a)(3).

29. Despite the representations made to Hayden, on or about October 1, 1999, Pfizer offered an additional voluntary separation package to employees at the Groton Plant, including employees of the OSP department where Hayden was to be transferred had he not retired when he did. Had Hayden not retired, he would have been eligible for this voluntary separation package.

30. But for the false and/or misleading information supplied to him by Pfizer, Hayden would have accepted the October 1999 voluntary separation package and received substantial benefits.

WHEREFORE, the plaintiffs claim:

    1. Severance Policy benefits;

    2. Restitution;

    3. An order and/or injunction directing the defendant to permit the plaintiffs to participate in the severance policy benefits in the same manner and to the same extent the plaintiffs would have participated had the plaintiffs been allowed to accept an offer of the severance policy benefits;

    4. A declaration that the plaintiffs are entitled to participate in the severance policy benefits in the same manner and to the same extent the plaintiffs would have participated had the plaintiffs been allowed to accept the offer of the severance policy benefits;

    5. Attorney's fees and costs pursuant to Title 29 U.S.C. 1132(g);

6. Interest;

7. Such other and further relief as the court may deem just.

          THE PLAINTIFFS

By /s/ Thomas G. Moukawsher
Thomas G. Moukawsher (ct08940)
Moukawsher & Walsh, LLC
21 Oak Street; Suite 209
Hartford, CT 06106
(860) 278-7000

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing has been mailed on this date to the defendant at:

Douglas Varga
Zeldes, Needle & Cooper
1000 Lafayette Boulevard
Post Office Box 1740
Bridgeport, CT 06601-1740

Dated this 27th day of September, 2004.

    /s/ Thomas G. Moukawsher
    Thomas G. Moukawsher