UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD PROVENCHER, | : | Civil Action |
| RICHARD HALL, WILLIAM GARBATI, | : | |
| WILLIAM HAYDEN, GEORGE | : | No. 3:00 CV 2358 (CFD) |
| GAUTHIER, WARREN RUDDLESDEN, | : | |
| WILLIAM ZERONSA, and MICHAEL | : | |
| WHEELER, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PFIZER INC, | : | |
| | : | |
| Defendant. | : | May 23, 2005 |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Pfizer Inc ("Pfizer") submits this Reply Memorandum in further support of its Motion for Summary Judgment dated November 30, 2004.

**Introduction**

Two brief statements in plaintiffs' papers opposing summary judgment demonstrate the fundamental underpinnings of their claims in this case. In their response brief, plaintiffs summarize their claims: "Pfizer abused the Program by capriciously deciding who was 'excess' and who wasn't." Pl. Brief at 10.[1] The Declarations plaintiffs submitted, while in most respects deficient, nevertheless contain

---

[1] The materials submitted by the parties regarding Pfizer's Motion for Summary Judgment are identified as follows: plaintiffs' Memorandum of Law Opposing Pfizer's Motion for Summary Judgment dated March 28, 2005 ("Pl. Brief"); plaintiffs' Rule 56(a)1 Statement of Facts dated March 28, 2005 ("56(a)1 Stmt."); Pfizer's Memorandum of Law in Support of its Motion for Summary Judgment dated November 30, 2004 (("Pfizer Brief"); and Pfizer's Rule 56(a)1 Statement of Facts dated November 30, 2004 ("56(a)1 Stmt.").

a telling statement which captures the sense of entitlement permeating their claims: "So many people were leaving Pfizer with separation benefits, that I believed I would get them too." [2] In other words, plaintiffs are disappointed that Pfizer did not establish a severance program to suit their needs and according to their timetable.

This case is all about plaintiffs' desire to force Pfizer to pay them severance benefits. Despite Pfizer's position on the issue (i.e., that severance benefits under the voluntary separation programs ("VSPs") Pfizer established were made available only to employees in specific departments or with specific job classifications), plaintiffs felt entitled to them even if they were not eligible to receive benefits under the express terms of those VSPs. The remaining claims in this case are mere adornments to this basic position plaintiffs now advance.

Plaintiffs have responded to Pfizer's Motion for Summary Judgment with a lengthy submission undoubtedly designed to convince the Court that, if the briefing weighs enough, a question of fact must exist. [3] Plaintiffs' 76-page memorandum of law and 63-page statement of facts are long on hyperbole and vitriol and woefully short on reasoned analysis of the claims before the Court. Indeed, plaintiffs' failure to address in detail either the material facts of this case or many of Pfizer's arguments and legal authorities demonstrates the lack of merit in their claims. Name-calling cannot

---

[2] See Rule 56(a)2 Stmt., Ex. 5 (Garbati Decl.) at ¶ 4; Ex. 7 (Hall Decl.) at ¶ 4; Ex. 8 (Hayden Decl.) at ¶ 4; Ex. 10 (Ruddlesden Decl.) at ¶ 8; Ex. 11 (Zeronsa Decl.) at ¶ 4.

[3] Plaintiffs apparently believe that they can avoid summary judgment by barraging the Court with paper accumulated during the course of a series of suits plaintiffs' counsel has brought against Pfizer (as mentioned repeatedly in plaintiffs' response brief). Indeed, a substantial component of plaintiffs' documentary evidence does not even involve the severance programs at issue in this case. See 56(a)2 Stmt., Exs. 1-4, 12-16, 48.

overcome the basic legal deficiencies in plaintiffs' case. Summary judgment is warranted and should be granted.

## Argument

### A. Plaintiffs' Selective and Misleading Use of Facts Demonstrates the Lack of Merit in their Legal Claims

Plaintiffs' factual representations to this Court are contrived, selective, and utterly misleading. Given space limitations, Pfizer will not even attempt to expose each example of plaintiffs' fast-and-loose approach to the facts. It should suffice to observe that plaintiffs' factual summary is supported primarily by their Declarations, which are rife with inadmissible statements and never should have been presented to the Court.[4] A few examples drawn from plaintiffs' submissions further highlight their tactics:

- Plaintiffs state that "Pfizer responded to Gauthier and Zeronsa's complaints [about not being included in a VSP] by trying to cover its tracks." Pl. Brief at 16. Plaintiffs cite to an email exchange occurring after plaintiffs filed this suit, in which a human resources representative seeks confirmation (obviously based on the claims made in this action) that Pfizer actually needed these employees. Plaintiffs find that concern significant. Not surprisingly, plaintiffs fail to quote the response of the Plant Manager (Kerry Hertenstein): "As far as I am concerned, both Bill and George [Zeronsa and Gauthier] have solid job requirements – we definitely need them." 56(a)2 Stmt. Ex. 29. This factual assertion also is belied by plaintiffs' own testimony, in which each acknowledged that they were told that Pfizer needed their services to continue operating the Groton Plant, and that they continued to provide useful services until they retired. 56(a)1 Stmt. at ¶¶ 150, 152, 156, 157, 162, 189, 192, 193.

- Three plaintiffs (Hall, Garbati, and Provencher) cling to their contention that Pfizer did not offer them an opportunity to participate in a VSP in 1995, and that Pfizer transferred them to another department to prevent them from participating in the 1995 VSP. Pl. Brief at 17-21. This is rather interesting given Pfizer's proffer of documents signed by these plaintiffs and acknowledging their receipt of the 1995 VSP materials, and further

---

[4] These deficiencies are set forth in Pfizer's Motion to Strike filed contemporaneously with this brief.

3

- testimony that all three were eligible for, but declined, participation in the 1995 VSP.  56(a)1 Stmt. at ¶¶ 51 (Provencher), 65 (Hall), and 79 (Garbati).  Pfizer also notes that plaintiffs fail to contradict in any sense Pfizer's evidence (a) that Pfizer transferred these three plaintiffs in or about July of 1996 (not sometime in 1995 as they allege) as part of Pfizer's global reorganization of the quality control function in its manufacturing operations; (b) that the management of the Groton Plant had only an indirect role in this global restructuring; (c) that no employees (including these plaintiffs) were transferred for any reason other than to comply with this corporate restructuring; and (d) that any transfers (including the transfers of these three plaintiffs) had no relationship to any existing or future VSP.  56(a)1 Stmt. at ¶¶ 32-34.

- Plaintiffs' penchant for "selective" document parsing and interpretation is shown in their treatment of plaintiff Hayden's alleged "excess" status.  Plaintiffs' state:  "In February 1998, Pfizer's confidential Analysis of Excess Staffing explicitly listed Hayden as excess."  Pl. Brief at 25.  The document plaintiffs use as support, see 56(a)2 Stmt., Ex. 25, in no way states or infers that Hayden was considered excess as of February 1998.  The document is attached to an email rather clearly identifying the document as a "scenario" summarizing "our staffing excess at the end of 1999" (emphasis added).  The email continues by stating that "further loss of experienced people will jeopardize our ability to run these areas."  This is consistent with Hayden's deposition testimony, in which he acknowledges his value to Pfizer because he was the best person to preside over the curtailment of various product lines, as confirmed by various Pfizer representatives with whom he pleaded his case for VSP participation in the summer of 1998.  56(a)1 Stmt. at ¶ 120.  Plaintiffs' statement that "while recording that it didn't need Hayden, the company bounced him from place to place," Pl. Brief at 25, is absurd, a misstatement of the record, and unfortunately consistent with plaintiffs' approach to facts.

Similar examples of documentary overreaching and selective factual references abound in plaintiffs' papers.

Plaintiffs argue that this case cannot be resolved on summary judgment because "the parties dispute all of the material facts underlying the plaintiffs' causes of action." Pl. Brief at 35.  At this point in the proceedings, disputing the facts is not enough: plaintiffs were obligated to produce admissible evidence demonstrating that material

4

facts exist and must be resolved at trial. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1985) (party opposing a motion for summary judgment must "go beyond the pleadings and by … affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."). This they have failed to do.

**B.    Each VSP at Issue Constitutes a Separate ERISA Plan**

Plaintiffs go to great lengths to attempt to show that Pfizer's publicly-disclosed ten-year reorganization and restructuring plan for its Groton Plant in fact was a ten-year ERISA-governed severance benefit plan. Pl. Brief at 39-46.[5] They cite a host of cases (some with citation, some without), none of which provides support for the theory they advance. Particularly confounding is plaintiffs' extended discussion of Mathews v. Chevron, 362 F.3d 1172 (9th Cir. 2004), which involved alleged misrepresentations to employees, not the existence of an ERISA plan or even (as plaintiffs intimate) whether an employer's selection of classes of employees for participation in a severance plan implicates fiduciary duties under ERISA.[6]

While plaintiffs discuss cases with no bearing on the issue, they do not address cases cited by Pfizer in its opening brief and which clearly resolve the issue before the Court. Watson v. Proctor, 161 F.3d 593, 596 (9th Cir. 1998) ("[E]ven if the plans were

---

[5] Indeed, plaintiffs try to convince the Court that it too has bought into plaintiffs' interesting theory. They refer to Pfizer's ten-year downsizing plan as "the plan this Court has already recognized in its decision denying Pfizer's motion to dismiss: 'The plaintiffs' claims arise out of a severance plan adopted by Pfizer in furtherance of its Groton 2000 program.'" Pl. Brief at 38. The Court's statement, of course, referred solely to the allegations of plaintiffs' complaint, which it was required to accept as true in ruling on a motion to dismiss. At this stage of the case, Plaintiffs no longer can seek shelter in this lenient view of their "facts."

[6] Plaintiffs' discussion of this case includes quotations not found in the Mathews opinion. See Pl. Brief at 44.

5

created simultaneously or shared other common characteristics, they are independent plans under ERISA"); <u>Robertson v. Alexander Grant & Co.</u>, 798 F.2d 868, 871 (5th Cir.), <u>cert. denied</u>, 479 U.S. 1089 (1987) (rejecting argument that two plans that covered separate groups were really one plan because the plans were nearly identical).

Finally, without citation to any evidence in the record, plaintiffs state that Pfizer did not properly establish the VSPs as separate ERISA plans. <u>See</u>, <u>e.g.</u>, Pl. Brief at 38-39. Pfizer has provided this Court with direct testimony of the establishment of these plans and authenticated copies of the ERISA plan documents establishing each VSP at issue in this case. 56(a)1 Stmt., Ex. 9 at ¶¶ 5-20 and Exs. D, F, H. Plaintiffs' failure to provide <u>any</u> evidence to contest the validity of this evidence speaks volumes.[7] At any rate, plaintiffs have not offered any evidence contradicting or overcoming Pfizer's assertion that these VSPs were established as separate ERISA plans.

**C.   The Breach of Fiduciary Duty Claim**

**(1)   Pfizer Did Not Act in a Fiduciary Capacity in Determining Whether Plaintiffs Would be Eligible to Participate in Any Severance Program**

Plaintiffs do not respond to Pfizer's argument that it did not act in a fiduciary capacity when determining which departments and job classifications would participate

---

[7] Notably, plaintiffs do not even try to undermine Pfizer's detailed evidence regarding the process by which each of the VSPs at issue came into being; that is, through an annual assessment of staffing needs during the normal budgetary process, followed by consideration by Plant management, and (if determined to be beneficial) followed by a request for approval by Pfizer corporate management. 56(a)1 Stmt. at ¶¶ 7-14. Plaintiffs also steer clear of the fact that local Plant management requested authority to offer a VSP in 1994, only to be rebuffed by corporate management. 56(a)1 Stmt. at ¶ 15. This further confirms that each VSP was a separate and independent ERISA plan.

in potential severance programs.  See Pfizer Brief at 16-23.  As plaintiffs appear to have conceded this essential point, summary judgment in Pfizer's favor is appropriate.

**(2)   Plaintiffs Cannot Obtain Relief Under § 502(a)(3) Because an Adequate Remedy Exists Under § 502(a)(1)(B).**

The Second Circuit's ruling in Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89-90 (2d Cir. 2001), cert. denied sub nom. Empire Blue Cross and Blue Shield v. Byrnes, 537 U.S. 1170 (2003), does not authorize duplicative theories of recovery for breach of fiduciary duty and to recover benefits under ERISA when, as here, a plaintiff clearly seeks to recover benefits under an ERISA plan.  Plaintiffs discuss Pfizer's argument on this point at pages 66-68 of their response brief.  Plaintiffs, however, refer to only one of the 10 cases Pfizer cited in support of its position, see Pfizer Brief at 23-27, and otherwise fail to dispute Pfizer's position.  Precedent and logic support Pfizer's argument.  See, e.g., Kourinos v. Interstate Brands Corp., 324 F.Supp.2d 105, 108 (D. Me. 2004) ("ERISA does not impose a fiduciary duty to pay benefits that are excluded under the plan. … [I]f [the plaintiff] is not entitled to receive benefits under the plan, he cannot base his breach of fiduciary duty claim on [the defendant's] refusal to pay him benefits.") (citations omitted).   Pfizer cannot be held responsible for breaching a fiduciary duty to pay benefits not due under the express terms of any ERISA plan.

Section 502(a)(1)(B) provides plaintiffs with an adequate avenue of relief for the claims they assert in this case.  To the extent plaintiffs seek to maintain a claim under § 502(a)(3), the claim should be rejected because the claim is redundant, unnecessary, and inappropriate.

## C. The Benefit Claim

Plaintiffs claim entitlement to benefits under VSPs Pfizer offered between 1996 and 2000. They challenge Pfizer's determination that they were not eligible for VSP benefits under the terms of those plans, but cannot contest the fact that they were not eligible under the terms Pfizer established for its Plans. 56(a)1 Stmt. at ¶¶ 27.

In this case, plaintiffs' benefit claim is foreclosed by virtue of the fact that, by their own admission, they did not qualify for benefits because Pfizer chose not to designate them as eligible for receipt of benefits under any severance program. Plaintiffs opinions as to whether Pfizer correctly or incorrectly determined that they were not "surplus" or "excess" has no bearing on a benefit claim; if plaintiffs were not eligible to participate in the severance program, then they are not entitled to receive benefits under the severance program. They have no claim under ERISA § 502(a)(1)(B).

## D. The Discrimination Claim

Three plaintiffs (Hall, Garbati, and Provencher) assert claims under § 510 of ERISA.[8] Plaintiffs have responded to Pfizer's argument on summary judgment by essentially repeating the same arguments they made in response to Pfizer's prior Motion to Dismiss. Plaintiffs again fail to recognize that at this stage of the proceedings, they must do more.[9] At this point, all they have is argument. But failing to include an employee in a benefit program, or showing alleged favoritism to some employees,

---

[8] The remaining plaintiff acknowledge that Pfizer did not transfer them in an attempt to prevent them from participating in any VSP. 56(a)1 Stmt. at ¶¶ 134 , 180, 196.
[9] Should the Court consider plaintiffs' arguments, Pfizer respectfully directs the Court to the responsive arguments set forth in Pfizer's Motion to Dismiss dated March 21, 2001, and its Reply Memorandum in further support of that Motion dated May 24, 2001.

simply does not support a § 510 claim.  Edwards v. Akzo Nobel, Inc., 103 F.Supp.2d 214 (W.D.N.Y. 2000),

In responding to Pfizer's Motion for Summary Judgment, plaintiffs do not contest the substantial body of case law confirming that ERISA § 510 does not apply to the type of claims they make in this case.  Still, in the face of established law finding no "favoritism"-based claim for relief under § 510, see Pfizer Brief at 31-35, plaintiffs now have retreated from the "favoritism" claim pleaded in their Second Amended Complaint.  These plaintiffs now explain their claim in the following manner:  "The plaintiffs complain that their employment status and that of others was juggled so that when certain employees left voluntarily (typically by retirement) they were labeled 'excess' and got special severance benefits, while the plaintiffs retired with no severance benefits even though they were similarly situated to the plaintiffs who received them."  Pl. Brief at 61.

The Second Circuit adopted the burden-shifting test of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for analyzing discrimination cases under § 510.  Dister v. Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir.1988).  Under this analysis, the plaintiffs first must establish a prima facie case of discrimination by demonstrating:  (1) that they belonged to a protected class;  (2) that they were qualified for the job they were performing;  (3) that they were discharged or subjected to an adverse employment action;  and (4) that the discharge or adverse action occurred under circumstances giving rise to an inference of discrimination.  Id. at 1112.

Even if the Court were to determine that plaintiffs met their burden to establish a prima facie case of discrimination (which Pfizer submits they have not), Pfizer must prevail on this claim because it was required only to articulate -- but not to prove -- a legitimate, nondiscriminatory reason for its actions. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). Pfizer has done so.

The basis for the "juggling" claim is plaintiffs' assertion that Pfizer (a) transferred them to the Quality Control department in 1995, (b) for the purpose of excluding them from participating in a VSP offered that year. In moving for summary judgment, Pfizer has offered evidence (uncontroverted by these plaintiffs) establishing that (a) Pfizer transferred these plaintiffs to the Quality Control department in July of 1996, 56(a)1 Stmt. at ¶¶ 32-34, and (b) that plaintiffs were offered the opportunity to participate in a VSP offered in 1995, but they declined that opportunity (as they had earlier opportunities). 56(a)1 Stmt. at ¶¶ 50, 51, 64, 65, 78, 79.

These plaintiffs address neither of these issues in their response. However, once Pfizer presented this evidence, the plaintiffs' burden was to prove that the reason Pfizer advanced (i.e., the global restructuring of its quality control operations in 1996) was a mere pretext for discrimination. Burdine, 450 U.S. at 256. Plaintiffs bear the ultimate burden of demonstrating that the real motivation underlying the Pfizer's alleged discriminatory s actions was unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 517-18 (1993). Plaintiffs have not even attempted to meet this burden. As plaintiffs have failed to overcome the legitimate, non-discriminatory reasons for Pfizer's actions, plaintiffs § 510 claim must fail as a matter of law.

10

### E.     Hayden's Breach of Fiduciary Duty Claim

In its opening brief, Pfizer discussed at length and in great detail plaintiff William Hayden's breach of fiduciary duty claim under the standard the Second Circuit established in Ballone v. Eastman Kodak, 109 F.3d 117 (2d Cir. 1997).  Pfizer Brief at 35-44.  Ballone remains the standard by which the legitimacy of such claims are evaluated.  Nevertheless, Hayden presents an extended discussion of "possible approaches" to addressing ERISA breach of fiduciary duty claims. Pl. Brief at 48-53.  Pfizer submits that the reason for this discussion is clear:  Hayden understands that the Ballone analysis (amply supported by the actual facts of this particular case, as established by Hayden himself) dooms his claim.

Pfizer again refers the Court to its analysis of this claim, and notes Hayden's failure to contradict that analysis with contrary precedent. [10]  Pfizer need make only three brief points here.  First, Hayden again supports his claim with the speculative assertion that he would have been eligible to participate in a VSP offered nearly 15 months after he retired because he would have been transferred to a department whose members were eligible to participate in that VSP.  Pl. Brief at 58-59.  Hayden supports this assertion with a hearsay statement which, as shown in Pfizer's Motion to Strike, cannot be considered on summary judgment.

Second, Hayden supports his claim with the following statement:  "Pfizer unwittingly supports Hayden's claim by suggesting he was replaced" by another

---

[10] Pfizer specifically notes Hayden's failure in any way to escape the reasoning of Radley v. Eastman Kodak Co., 19 F.Supp.2d 89 (W.D.N.Y 1998, a case presenting facts and claims similar to those presented here. See Pfizer Brief at 43-44.

11

employee. Pl. Brief at 59. This statement provides yet another glimpse into plaintiffs' gift for distorting the record. In fact, as shown in an exhibit plaintiffs themselves have presented to this Court, Pfizer expressly has stated that "Hayden was not 'replaced' by any particular employee." 56(a)2 Stmt., Ex. 21 at 2.

Third, even Hayden only goes so in stating that Pfizer representatives "indicated" that no further VSPs would be offered at the Groton Plant. While Pfizer disputes the existence of any such "indications" as a factual matter, see 56(c )1 Stmt. at ¶¶ 105, 111, 117, Hayden cannot prevail as a matter of law even if his testimony is credited. See Pfizer Brief at 35-44. Perhaps the most telling aspect of Hayden's argument is his reliance on the following quote from Ballone: "Where an ERISA fiduciary makes guarantees regarding future benefits that misrepresent present facts, the misrepresentations are material if they would induce a reasonable person to rely upon them." Pl. Brief at 57-58 (quoting Ballone, 109 F.3d at 122). Hayden has admitted that no one made any guarantees to him. 56(a)1 Stmt. at ¶¶ 104, 107, 110, 116. Even if he had claimed guarantees were made, he reasonably could not have relied on such statements. At the time he made his decision to retire, Hayden knew that Pfizer might offer another VSP after his retirement. Rule 56 Stmt. at ¶¶ 129-31, 138. He knew that the "business climate can change, which might precipitate some future VSP or some reduction in force plan." Rule 56 Stmt. at ¶ 129. He knew that the Groton Plant had been undergoing restructuring and reorganization, and that there was no reason to believe that the process would not continue. Rule 56 Stmt. at ¶¶ 92, 131.

12

Notwithstanding Hayden's desire for a "test" other than <u>Ballone</u>, the <u>Ballone</u> framework remains the standard in this Circuit. Hayden cannot meet the <u>Ballone</u> standard, and his claim fails as a matter of law.

## **Conclusion**

For the reasons set forth above and in Pfizer's' initial brief, Pfizer submits that the uncontroverted facts of this case and established law mandate the entry of summary judgment in its favor on all claims for relief asserted in plaintiffs' Second Amended Complaint.

    Respectfully submitted,

    DEFENDANT
    PFIZER INC


By: _____
    Douglas J. Varga (ct18885)

    Z<small>ELDES</small>, N<small>EEDLE</small> & C<small>OOPER</small>, P.C.
    1000 Lafayette Boulevard
    P.O. Box 1747
    Bridgeport, CT  06601-1747
    Telephone:  (203) 333-9441
    Facsimile:   (203) 333-1489
    Email:  dvarga@znclaw.com

Its Attorneys

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent via United States Mail, postage prepaid, on this date, to:

>Thomas G. Moukawsher, Esq.
>Moukawsher & Walsh, LLC
>328 Mitchell Street
>P.O. Box 966
>Groton, CT 06340

Dated at Bridgeport, Connecticut this 23rd day of May, 2005.

_____
Douglas J. Varga

14