# EXHIBIT A

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 11, 2005          Decided May 17, 2005

No. 04-7060

MARIAN R. WAGENER, ON BEHALF OF HERSELF
AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED AND
DONALD F. CHAMPOUX, ON BEHALF OF HIMSELF
AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
APPELLANTS

v.

SBC PENSION BENEFIT PLAN - NON BARGAINED PROGRAM,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 03cv00769)

*Marc I. Machiz* argued the cause for appellants. With him on the briefs were *Marka Peterson* and *Eli Gottesdiener*.

*John L. Carter* argued the cause for appellee. With him on the brief were *Bruce A. Blefeld* and *C. Michael Buxton*.

Before: EDWARDS, SENTELLE, and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

2

EDWARDS, *Circuit Judge*: The principal question in this case is whether plaintiffs-appellants Marian Wagener and Donald Champoux stated a claim upon which relief can be granted in their complaint alleging that defendant-appellee, the SBC Pension Benefit Plan-Nonbargained Program ("SBC Plan" or "Plan"), impermissibly discriminated against plaintiffs and other Plan participants in the administration of the SBC Plan. We conclude that plaintiffs have indeed stated a claim under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (2000). Therefore, we reverse the District Court's dismissal of plaintiffs' claims.

According to their complaint, Wagener and Champoux worked for companies that are affiliated with the Plan sponsor, SBC Communications, Inc. ("SBC"). Wagener and Champoux are both participants in the Plan and, in November 2000, they retired pursuant to an enhanced benefit program that was designed to encourage early retirement. The calculation of benefits under the terms of this program depends in part on the amount of a participant's compensation between January 1, 1995 and December 31, 1999. The present dispute turns on how to calculate plaintiffs' compensation during this period. According to the defendant, plaintiffs' compensation between January 1, 1995 and December 31, 1999 includes only the amount of pay plaintiffs actually *received* during this period, thus excluding a paycheck that Wagener and Champoux received on January 5, 2000 for work they performed in 1999. By contrast, Wagener and Champoux argue that their level of compensation for benefit calculation purposes includes compensation *earned* between January 1, 1995 and December 31, 1999, even though one paycheck for this period was received at the beginning of the 2000 calendar year. They also allege that other similarly situated Plan participants have been paid benefits based on compensation earned, not received, in the base period,

3

thus confirming their entitlement to benefits under a non-discrimination clause in the Plan.

We hold that Wagener and Champoux have alleged sufficient facts to state a claim for denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), because their complaint includes the allegation that Plan officials discriminated against them vis-à-vis similarly situated Plan participants in contravention of the Plan's plain language. Any deference we owe to discretionary decisions of Plan officials does not extend to decisions that discriminate among Plan participants in violation of the plain terms of the Plan. Therefore, we reverse the District Court's decision granting the Plan's motion to dismiss. We also vacate the District Court's denial of the class-certification motion filed by Wagener and Champoux, as that motion is no longer moot in light of our disposition of this appeal.

## I. BACKGROUND

The following facts are taken from plaintiffs' complaint, as well as the exhibits attached to, and the documents incorporated by reference in, that complaint. Because we are reviewing the District Court's decision to grant the SBC Plan's motion to dismiss for failure to state a claim, we assume that the facts alleged in plaintiffs' complaint are true. *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1157 n.2 (D.C. Cir. 2002).

The SBC Pension Benefit Plan – Nonbargained Program is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), sponsored by SBC, which is the Plan administrator and a named fiduciary of the Plan. Compl. ¶ 7, 3/27/03, *reprinted in* Joint Appendix ("J.A.") 6, 12. The Benefit Plan Committee ("Committee") is also a named fiduciary of the Plan and has primary responsibility for the review of benefit claims under the Plan. *Id.* The Committee has delegated

4

administrative responsibility and authority to review claims to the SBC Pension Plan Service Center ("Service Center"), which services, administers, and operates the Plan on a day-to-day basis. *Id.* Plaintiffs Wagener and Champoux were at all relevant times participants in the Plan. *Id.* ¶¶ 5-6, J.A. 11.

SBC altered the Plan's benefit structure in 1997, but preserved the pre-existing structure for certain employees, including plaintiffs, who retained a "Grandfathered Benefit." *See id.* ¶¶ 11-12, J.A. 13; SBC Communications, Inc. Board of Directors Resolutions Amending the Plan Effective 6/1/1997, J.A. 788, 792. It is undisputed that the 1997 Plan amendment has no bearing on the merits of this case.

In 1998, SBC began requiring some SBC-affiliated companies that participated in the Plan to change the method that they used to determine the Basic Compensation portion of a Plan participant's Pension Compensation, which ultimately affected the amount of the participant's benefits under the Plan. Compl. ¶ 18, J.A. 15. Under the regime in place prior to 1998, Basic Compensation was calculated based on a participant's Basic Rate of Pay over a specified period. *Id.* ¶ 15, J.A. 14. Under this approach, Basic Compensation meant that a participant would obtain credit for his or her full-time base pay rate, whether or not she worked full time during that period. *Id.* ¶ 17, J.A. 14-15.

Beginning in 1998, SBC required some participating companies to use "actual base pay" instead of Basic Rate of Pay to determine an employee's Basic Compensation under the Plan. The purpose of this change, which was implemented through a series of Plan amendments ("actual base pay amendments"), was to allow participants to accrue pension credits only for work they actually performed. *Id.* ¶¶ 18-19, J.A. 15-16. Under the terms of an April 13, 1999 Plan amendment ("April 1999 actual base pay amendment"), SBC switched SBC Management Services, Inc., which employed plaintiffs Wagener and

5

Champoux, from the Basic Rate of Pay to the "actual base pay" method for calculating employee participants' Basic Compensation, effective July 1, 1999. *Id.* ¶¶ 19-20, J.A. 16.

On June 14, 1999, SBC, acting as Plan administrator, sent a written notice to Wagener, Champoux, and others, which stated in relevant part:

> "The [Plan] is being amended effective July 1, 1999 to change the method that is used to calculate your pension compensation, which may affect the amount of your benefit . . . . The Basic Rate of Pay portion of Pension Compensation will be replaced by Actual Base Pay. The Basic Rate of Pay is your full time monthly Base Pay, whether you worked it or not. The Actual Base Pay is the base pay you actually receive."

*Id.* ¶ 22, J.A. 17 (alterations in original); *see also* J.A. 89 (copy of the notice attached as an exhibit to the complaint).

On January 4, 2000, actual base pay was defined in the Plan, *id.* ¶ 24, J.A. 17, to mean "a Participant's Compensation that has actually been paid out by a Participating Company on such Participant's behalf and that has been identified by such Participating Company as base pay." Plan Amendment, 1/4/00, J.A. 91, 93 (attached as exhibit to the complaint).

On September 20, 2000, as part of a company-wide downsizing, SBC adopted a Plan amendment that added an Enhanced Pension and Retirement Program ("EPR Program") to the Plan. The EPR Program was designed to encourage thousands of employees of SBC and SBC-related companies to take early retirement by offering them a larger retirement benefit than they would have otherwise received. Compl. ¶ 8, J.A. 12. The EPR Program provided that employees who decided to retire under its terms would receive the largest of several alternative benefits for which they were eligible. *See id.* ¶ 11, J.A. 13.

6

Plaintiffs Wagener and Champoux were eligible for the EPR Program, and they elected to retire under it. Their last day of work was November 15, 2000. *Id.* ¶¶ 9-10, J.A. 13. For Wagener and Champoux, the largest benefit available under the EPR Program was the "Enhanced Grandfathered Benefit." *Id.* ¶ 11, J.A. 13. The "Enhanced Grandfathered Benefit" calculated participants' benefits as if they were five years older and had worked five years longer for a SBC company than they actually had. *See* SBC Pension Benefit Plan Nonbargained Program, As Restated Effective 2/1/95 (incorporating EPR amendments) ("SBC Plan" or "Plan"), J.A. 254, 262. Except for that enhancement, the Plan amendments creating the EPR Program explicitly provided that "the Enhanced Grandfathered Benefit shall be a benefit calculated in the same manner as the Grandfathered Benefit would be calculated . . . under the current [Plan]." *Id.*

The present dispute emanates from the Committee's calculation of plaintiffs' benefits under the EPR Program. To calculate the "Enhanced Grandfathered Benefit" under the EPR Program, the Committee must first determine a participant's "Adjusted Career Income," which is a function of, among other things, the participant's "Average Annual Compensation" for the period from January 1, 1995 through December 31, 1999. Compl. ¶ 12, J.A. 14. As the term was used in the portion of the Plan providing for the Grandfathered Benefit at the time that the EPR Program was adopted, "Average Annual Compensation" meant "'a Participant's Pension Compensation [which included Basic Compensation plus other forms of compensation] during the Averaging Period, divided by five years.'" *Id.* ¶ 13, J.A. 14; *see also* J.A. 257 (copy of the SBC Plan). Thus, with regard to plaintiffs and other individuals eligible for the "Enhanced Grandfathered Benefit," "Average Annual Compensation" was their total Pension Compensation between January 1, 1995 and December 31, 1999 – the relevant "Averaging Period" – divided by five.

7

On September 6, 2001, plaintiff Champoux wrote the SBC Pension Plan Service Center, complaining that one full pay period from 1999 had been excluded from the Averaging Period used to calculate his Pension Compensation. He stated:

> "Since SBC paid the management employees on a semi-monthly basis, the total number of payments necessary for a full year compensation is 24. As you will note in the [attached table regarding the calculation of Champoux's benefits], the total number of payments . . . for the year 1999 is only 23. All years except 1999 have 24 payments. . . . If SBC believes it is appropriate to exclude some compensation from within the total base period compensation, then it should also exclude the applicable time period from the averaging calculation."

*Id.* ¶ 31, J.A. 21 (emphasis added by complaint omitted). On December 7, 2001, the Service Center denied Champoux's request, stating that, because the April 1999 actual base pay amendment changed the method used to calculate Pension Compensation from Basic Rate of Pay to actual base pay effective July 1, 1999, one of the paychecks Champoux received in July 1999 was not included in the calculation of his Pension Compensation. *See id.* ¶¶ 32-33, J.A. 22.

In February 2002, Champoux appealed this denial to the Plan's Benefit Plan Committee. The Committee wrote Champoux in May 2002, informing him that his appeal had been denied. The denial letter did not endorse the position taken by the Service Center in its December 2001 letter to Champoux. Instead, the Committee explained:

> "What actually happened was that the [April 1999 actual base pay] amendment caused a delay in the recognition of pay, so that the pay you received for the period ended December 31, 1999 was recognized as pay in the calendar year 2000 (because it was paid on January 5, 2000); prior to

8

> the amendment, pay received for the period ended December 31, 1999 would have been recognized in 1999. Therefore, as a result of the amendment, twenty-three pay periods were included in 1999 pay instead of twenty-four. It was the accounting change to actual base pay in 1999 that resulted in what appeared to you to be discrepancy in your pension calculation."

*Id.* ¶ 37, J.A. 25 (emphasis added by complaint omitted).

The Committee reached this decision notwithstanding that it had previously endorsed a contrary interpretation of the actual base pay amendments for Grandfathered retirees who were not participants in the EPR Program. Specifically, the plaintiffs' complaint alleges that

> between January 1, 1998 and today, the Plan has consistently administered the Grandfathered Benefit for all retirees – except the Enhanced Grandfathered Benefit for EPR retirees – by including *all* pay periods as part of "Average Annual Compensation" for the year in which they were *earned*, notwithstanding the [actual base pay amendments], and notwithstanding the fact that one full pay period was not *received* until after the end of the Averaging Period.

*Id.* ¶ 25, J.A. 18-19.

Champoux submitted two appeals of the Benefit Committee's decision, which were denied in August 2002 and October 2002. *See id.* ¶¶ 39-42, J.A. 26-28.

With regard to this appeal, the material facts relating to plaintiff Wagener's claim for benefits are virtually identical to those relating to Champoux. She also sought additional benefits from the SBC Plan and, like Champoux, she was informed that her benefits had been calculated by excluding one full pay period from 1999 from the calculation of her Pension

9

Compensation. Wagener's claim for additional benefits was also denied by both the Service Center, and, on appeal, by the Committee. *See id.* ¶¶ 43-48, J.A. 29-32.

Wagener and Champoux allege a number of facts that they assert demonstrate that the Committee's decision to deny their claims for additional benefits was influenced by a conflict of interest. Specifically, the complaint alleges that the plaintiffs' "correct interpretation of the Plan" would cost SBC roughly $30 million plus interest in additional contributions to what is already an underfunded Plan. *Id.* ¶ 58, J.A. 38. According to plaintiffs, "On information and belief, the members of the Benefit Plan Committee are officers and employees of SBC and its affiliates whose jobs and prospects for raises and promotions are affected, and/or are seen by them to be affected, by decisions interpreting the plan in a manner disadvantageous to SBC, especially one which would cost SBC some $30 million plus interest." *Id.* The complaint further alleges that this conflict of interest has influenced not only the Committee's ultimate interpretation of the Plan, but also other matters relating to the Committee's handling of plaintiffs' requests regarding their benefits, including (1) the Committee's refusal to provide plaintiffs with documents relating to their benefit claims, (2) the Committee's failure to provide plaintiffs with a reasoned basis for its decisions denying their claims for additional benefits, and (3) the Committee's October 2001 adoption of an after-the-fact Plan amendment to make it appear that the disparate treatment of EPR Grandfathered retirees vis-à-vis similarly situated non-EPR Grandfathered retirees had a textual basis when in fact the discriminatory treatment had been ongoing prior to the promulgation of the amendment. *Id.* ¶¶ 59-60, J.A. 38-39.

Having fully exhausted the internal claims procedures of the Plan, *id.* ¶ 49, J.A. 32, plaintiffs Wagener and Champoux filed suit against the SBC Plan in District Court in March 2003. In Count Two of their complaint, plaintiffs sought, on behalf of

10

themselves and a class of similarly situated participants and beneficiaries, additional benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), which authorizes individuals, *inter alia*, to bring civil actions to recover benefits due to them under the terms of their pension plan. Plaintiffs filed a motion for class certification concurrent with the filing of their complaint. In addition, in Count One of their complaint, plaintiffs sought additional disclosures of documents relating to their individual claims, as authorized by ERISA § 503, 29 U.S.C. § 1133, and its accompanying regulations. Plaintiffs' complaint also included two additional counts, which are not at issue here.

In May 2003, the SBC Plan moved to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Wagener then moved for summary judgment on the document disclosure claim.

The District Court granted the motion to dismiss the complaint and denied Wagener's motion for summary judgment. *Wagener v. SBC Pension Benefit Plan-Nonbargained Program*, Civ. A. No. 03-00769 (D.D.C. Mar. 29, 2004), *reprinted in* J.A. 1021. The District Court stated:

> The central question presented is whether the defendant Pension Benefit Plan was required to include a payment made on January 5, 2000, in the calculation of each plaintiff's "Average Annual Compensation." The defendant's Benefit Plan Committee, which interpreted the plan and calculated the benefits, decided that the Plan did not authorize inclusion of the January 5, 2000, payment because it was received *after* December 31, 1999, the end of each plaintiff's "Averaging Period." The Court finds that the Committee's interpretation of the plan is reasonable, and since that is all that is required due to the substantial-deference owed to the Committee's decision, that is the end of the matter.

11

*Id.*, J.A. 1021. The District Court further concluded that the plaintiffs' other claims were derivative of the benefit claim and thus dismissed them as well. *Id.*, J.A. 1022. In a separate order issued the same day, the District Court denied plaintiffs' motion for class certification as moot in light of its decision granting the SBC Plan's motion to dismiss. *Wagener v. SBC Pension Benefit Plan-Nonbargained Program*, Civ. A. No. 03-00769 (D.D.C. Mar. 29, 2004), *reprinted in* J.A. 1023. Plaintiffs appeal the dismissal of their claim for additional benefits under § 1132(a)(1)(B) and the dismissal of their motion for class certification as moot; Plaintiff Wagener also appeals the District Court's dismissal of the document disclosure claim (Count One) and the denial of her motion for summary judgment on that claim.

## II. ANALYSIS

### A. *Standard of Review*

We review *de novo* the District Court's dismissal of plaintiffs' complaint for failure to state a claim, accepting the factual allegations made in the complaint as true and giving plaintiffs the benefit of all inferences that can reasonably be drawn from their allegations. *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004). We are constrained to reverse the District Court's decision unless it appears beyond doubt that Wagener and Champoux can prove no set of facts in support of their claims that would entitle them to relief. *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B. *The Level of Deference Owed the Committee's Interpretation*

Before analyzing the specific facts of this case, we consider the level of deference owed to the Committee's interpretation of the SBC Plan. In *Firestone Tire & Rubber Co. v. Bruch*, 489

12

U.S. 101, 115 (1989), the Supreme Court held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." In this latter category of cases, the standard of review – variously described by the Court as "arbitrary and capricious" and "abuse of discretion" review – is plainly deferential. *See id.* at 111-15. This court has defined the *Firestone* deferential standard as one of "reasonableness." *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1452, 1454 (D.C. Cir. 1992).

In this case, Wagener and Champoux concede that the terms of the SBC Plan give the Committee discretionary authority to construe the Plan. *See* Appellants' Br. at 23. Nevertheless, plaintiffs argue that this court should apply heightened scrutiny to the Committee's interpretation of the SBC Plan, because they maintain that they have pleaded facts demonstrating that members of the Benefit Plan Committee had conflicts of interest. Plaintiffs find support for this position in *Firestone*, where the Court indicated that, "[o]f course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115 (alteration in original) (quoting RESTATEMENT (SECOND) OF TRUSTS § 187 (1959)).

The *Firestone* Court's "opaque direction about how courts should review discretionary benefits denials by potentially conflicted [plan] fiduciaries" in ERISA cases has "bedeviled the federal courts" ever since. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir. 2000). *Pinto* identified three approaches that federal appellate courts have taken in reviewing decisions of conflicted plan administrators that otherwise would be subject to only arbitrary and capricious or abuse of discretion review under *Firestone*: (1) shifting the burden to require

13

conflicted administrators to prove that their interpretation was not motivated by self-interest when that interpretation was apparently reasonable but would not survive *de novo* review; (2) reviewing decisions of administrators who have been influenced by a conflict of interest *de novo*; and (3) employing a sliding-scale approach, which accords different degrees of deference depending on the apparent seriousness of the conflict. *See id.* at 390-92 (collecting cases). *Pinto* embraced the sliding-scale approach, which it identified as the majority position. *See id.* at 379, 392-93.

The plaintiffs in this case maintain that they have pleaded adequate facts to demonstrate that the disputed decisions of the Committee warrant no deference, because they were tainted by conflicts of interest. On the record here, we need not determine (1) whether plaintiffs have pleaded adequate facts to suggest that the Committee operated under a conflict of interest under *Firestone* or, (2) assuming plaintiffs have pleaded sufficient facts, what the appropriate standard of review should be. As explained below, if we accept plaintiffs' allegations as true, it is clear that the officials responsible for administering the Plan construed the Plan in a manner that discriminated against plaintiffs in violation of the Plan's plain terms. An interpretation of the Plan that rests on impermissible discrimination is clearly unreasonable and, therefore, it fails whether we apply *de novo* review or a deferential standard of review. *See Springfield, Inc. v. Buckles*, 292 F.3d 813, 818 (D.C. Cir. 2002) (declining to decide which standard of review to apply to an agency interpretation of a statute, when the court would have upheld the agency's interpretation under either of the two possible alternative standards).

### C. *The Reasonableness of the Committee's Interpretation*

On the merits, the disposition of the parties' dispute in this case turns on a construction of § 4.2 of the SBC Plan, which governs benefit calculations for Grandfathered participants in

14

the EPR Program. Under § 4.2, benefits for EPR Grandfathered retirees depend on, among other things, a participant's "Average Annual Compensation for the period from January 1, 1995, through December 31, 1999." SBC Plan § 4.2, J.A. 262. Wagener and Champoux contend that, in calculating "Average Annual Compensation," the Plan erroneously excluded one pay period from 1999 on the mistaken assumption that the plaintiffs could receive credit only for compensation actually received, not earned, in 1999.

As noted above, the Plan defined "Average Annual Compensation" to mean "the Participant's Pension Compensation during the Averaging Period, divided by five years." *Id.* § 4.2.1(b)(3), J.A. 257. Pension Compensation, in turn, was based on a participant's Basic Compensation. *See id.*, § 2.66, J.A. 259. Prior to the actual base pay amendments, Basic Compensation for participants such as plaintiffs had been defined as a participant's "Basic Rate of Pay, as determined by his Participating Company, over a specified period." *Id.* § 2.8, J.A. 258. However, the actual base pay amendments substituted actual base pay for Basic Rate of Pay in determining Basic Compensation. *See* Plan Amendment 4/13/1999, J.A. 71, 73. Thus, due to the actual base pay amendments, "Average Annual Compensation" was calculated based on a participant's "actual base pay, as determined by his Participating Company, over a specified period, during the Averaging Period, divided by five years." The question presented here then is whether the Committee reasonably interpreted "actual base pay . . . during the Averaging Period" to mean pay actually received during the Averaging Period, as opposed to pay actually earned during the Averaging Period.

If this were the only relevant provision in the Plan, we would be hard pressed to hold that the Committee's interpretation was unreasonable. An interpretation of "actual base pay . . . during the Averaging Period" to mean pay actually

15

received is not itself unreasonable. There is nothing in the plain language of "actual base pay" that clearly indicates whether the term is intended to refer to pay actually earned or pay actually received. In other words, this language, without more, reasonably supports either construction.

This is not the end of the analysis however, because § 4.2 includes another clause that is crucial for the purposes of this appeal. Specifically, § 4.2 states that, except for the five-year enhancement to the participant's age and length of service, *"the Enhanced Grandfathered Benefit shall be a benefit calculated in the same manner as the Grandfathered Benefit would be calculated . . . under the current [Plan]."* SBC Plan § 4.2, J.A. 262. Plaintiffs allege that the Committee clearly violated this equal-treatment clause:

> the Plan has consistently administered the Grandfathered Benefit for all retirees -- except for the Enhanced Grandfathered Benefit for EPR retirees -- by including *all* pay periods as part of "Average Annual Compensation" for the year in which they were *earned* notwithstanding [the actual base pay amendments], and notwithstanding the fact that one full pay period was not *received* until after the end of the Averaging Period.

Compl. ¶ 25, J.A. 18-19. In other words, plaintiffs contend that, while Plan officials have interpreted "actual base pay" to mean pay actually *received* for the EPR Program Grandfathered participants, they have interpreted "actual base pay" to mean pay actually *earned* for other Grandfathered participants, notwithstanding the plain language of § 4.2 mandating that the benefits for the two groups of participants be calculated in the same manner (except for the "enhancement" for EPR Program participants).

Applying even the most deferential standard of review, we hold that plaintiffs' allegations clearly state a claim for which

16

relief can be granted. As plaintiffs justly contend, it is patently unreasonable for the Committee and other Plan officials who are authorized to administer the Plan to interpret the Plan in a manner that discriminates against plaintiffs in direct contravention of the Plan's plain language. *See Fuller v. CBT Corp.*, 905 F.2d 1055, 1058-60 (7th Cir. 1990) (concluding that evidence of disparate treatment in benefit decisions precluded summary judgment for an ERISA plan's trustees, even applying ordinary abuse of discretion review, where the governing document contained "an express requirement of uniform treatment"); *cf. Air Transport Ass'n of Am., Inc. v. FAA*, 291 F.3d 49, 53 (D.C. Cir. 2002) (explaining that, while agency interpretations of their own regulations "must be afforded substantial deference," the court will not defer if an alternative conclusion is compelled by the regulation's plain language).

The SBC Plan does not argue that it would be reasonable for the Committee, or other Plan fiduciaries with responsibility for construing and administering the Plan, to adopt Plan interpretations that directly contravene the plain meaning of the Plan's governing provisions. *See* Appellee's Br. at 20, 25; *see also* Recording of Oral Argument at 28:08-23 (acknowledgment by the Plan's counsel that, notwithstanding its discretion, the Committee does not have the authority to discriminate between similarly situated Plan participants). Rather, the Plan asserts that, "[i]f true, Plaintiffs' allegations would establish only that the Plan's recordkeeper, which performs such ministerial functions as the mathematical calculation of pension benefits, mistakenly paid certain Plan participants more than they were entitled to under the Plan." Appellee's Br. at 25. This argument is meritless, because it completely ignores the substance of plaintiffs' complaint.

In their complaint, Wagener and Champoux specifically allege that "SBC and Plan officials interpreted" the actual base pay amendments in a manner that was more favorable to non-

17

EPR Grandfathered participants than to EPR Grandfathered participants. *See* Compl. ¶¶ 25-28, J.A. 18-20 (quote at ¶ 25, J.A. 18). In other words, plaintiffs allege that the differential treatment accorded non-EPR Grandfathered participants and EPR Grandfathered participants was the result of deliberate decisions made by officials responsible for the administration of the Plan, not to ministerial errors. The Plan's suggestion to the contrary in its brief to this court surely does not negate plaintiffs' well pleaded complaint.

In short, plaintiffs' complaint asserts that Plan officials have administered the Plan in a manner that treats EPR and non-EPR Grandfathered retirees differently, notwithstanding the Plan's unmistakable command to treat these two groups similarly except for the benefit enhancement EPR participants receive. Treating this allegation as true, plaintiffs have stated a claim upon which relief can be granted. As noted above, even under a deferential standard of review, Plan fiduciaries cannot claim deference for an interpretation of the Plan that discriminates against plaintiffs in a manner that contradicts the Plan's plain language. We therefore reverse the District Court's judgment dismissing plaintiffs' action for additional benefits under § 1132(a)(1)(B) and remand the case for further proceedings consistent with this opinion.

\* \* \* \* \*

We also vacate the District Court's order denying plaintiffs' motion for class certification, as that motion is no longer moot. Likewise, we reverse the District Court's judgment granting the Plan's motion to dismiss plaintiffs' document disclosure claim. That decision was based on the trial court's conclusion that plaintiffs' document disclosure claim could not survive absent their claim for additional benefits, a judgment that we reverse with this decision.

18

Finally, we vacate the District Court's denial of Wagener's motion for summary judgment on her document production claim. We express no view on the merits of this claim, for we believe that this matter should be addressed by the District Court in the first instance in light of our decision.

### III. CONCLUSION

The District Court's grant of the SBC Plan's motion to dismiss is hereby reversed with regard to Counts One and Two of the plaintiffs' complaint, and the District Court's denial of plaintiffs' motions for class certification and for summary judgment are hereby vacated. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing has been mailed on this date to the defendant at:

>Douglas Varga
>Zeldes, Needle & Cooper
>1000 Lafayette Boulevard
>Post Office Box 1740
>Bridgeport, CT 06601-1740

Dated this 27th day of May, 2005.

_____
Thomas G. Moukawsher